[No. 51882-8-I.   Division One.   May 10, 2004.]

JESS R. DRAKE, ET AL., *Respondents*, v. ROBERT SMERSH, ET AL., *Appellants*.

*Philip J. Buri* (of *Buri Funston, P.L.L.C.*), for appellants.

*Philip A. Serka* (of *Adelstein, Sharpe & Serka, L.L.P.*), for respondents.

AGID, J. — Appellants Robert and Jane Doe Smersh (Smersh) appeal a trial court decision granting their neighbors, respondents Jess and Sandra Drake (Drake), a prescriptive easement over a driveway located primarily on Smersh's land. Smersh argues that there is a presumption of permissive use which the trial court improperly ruled had terminated when Smersh's predecessor in interest sold the servient land in 1975. But we agree with Drake's position that the permissive use presumption does not apply in this case, and there was sufficient evidence to establish the adverse element of his prescriptive easement claim. We therefore affirm the trial court.

## FACTS

In 1952, Floyd Kenneth Massey bought a vacant lot on Lummi Island where he intended to build a cabin. The Wallens family owned the adjacent lot on which an existing driveway ran from South Nugent Road to the Wallens' cabin. When Massey began to construct his cabin, he extended the existing driveway with a bulldozer to gain access to his property. The Wallens raised no objection, and Massey did not ask their permission to extend the drive. The driveway served as the sole access to Massey's dwelling, and both property owners used the driveway without incident. In 1975, the Wallens sold their property to the Wright Fish Company. From 1975 until 1984, Massey used the driveway and maintained it when necessary, again without objection or incident.

In 1984, Massey sold his property to Jess Drake who surveyed the property before the sale and discovered that the driveway was located largely on Wright's lot. From 1984 until 1997, Drake used the driveway without objection or incident as access for himself and his employees and agents who maintained the property. He also maintained the driveway when appropriate.[1] In 1997, the Wright Fish Company sold its lot to Robert Smersh.[2] For the next year, Drake continued to use the driveway, but in 1998 Smersh told Drake he wanted him to stop using it. Drake then filed an action to quiet title to a prescriptive easement.

The trial court ruled in favor of Smersh, concluding that Drake and his predecessors in interest "were suffered the use of the driveway as [a] neighborly convenience."[3] The court found no evidence that Drake or his predecessors made an adverse claim to the driveway,[4] and it concluded Drake did not overcome the presumption of permissive use.[5] Drake moved for reconsideration and after two hearings on the matter, the trial court granted his motion, awarding Drake a prescriptive easement over the driveway. It concluded that any presumption of neighborly accommo-

---

[1] Drake removed trees that had fallen across the driveway after a storm and trimmed the underbrush that encroached on it.

[2] Smersh purchased the property as the owner of Bob's Marine Work.

[3] The trial court stated,

[B]ecause the road primarily serves the servient property[,] there is strong indication that the [driveway] was either created for the benefit of both properties, or that Massey . . . [was] suffered the use of the property as [a] neighborly convenience. . . .

[4] The trial court stated,

The issue arises, whether during the period of the Masseys and the Drakes, . . . that if permission had been originally granted, or the [driveway] had been used by acquiescence, it had been withdrawn, or had come into issue or thereafter the use became hostile in the manner of prescription or adversity. The evidence shows no issue ever arose until the present owner of the servient parcel sought to end use. . . .

[5] The trial court stated,

There is nothing to suggest any animosity or difference of opinion between the neighbors respecting the [driveway] in this case. The court concludes there are no[ ] facts to overcome the presumption of permissiveness and finds for the defendant.

dation terminated with the original owners and Drake's driveway use after the Masseys sold the property was adverse.

ANALYSIS

I. Motion for Reconsideration

■ We review a trial court's decision to grant or deny a motion for reconsideration for abuse of discretion.[6] A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds.[7] Smersh argues that the trial court's decision to grant Drake's motion for reconsideration was manifestly unreasonable because there is no evidence of hostile or adverse use and the court had properly applied the law in its first ruling. We conclude that the trial court erred by applying a presumption of permissive use in its original ruling. And because the evidence establishes that the Drake's use was adverse, the trial court did not abuse its discretion by granting the motion.

II. Adverse Use

■ To establish a prescriptive easement, a claimant must prove "use of the servient land that is: (1) open and notorious, (2) over a uniform route, (3) continuous and uninterrupted for 10 years, (4) adverse to the owner of the land sought to be subjected, and (5) with the knowledge of such owner at a time when he was able in law to assert and enforce his rights."[8] A party can establish a prescriptive right even though the owner of the servient estate and others who wanted to go on the property also used it, so long as the claimant exercises and claims his right independent

---

[6] *Kohfeld v. United Pac. Ins. Co.*, 85 Wn. App. 34, 40, 931 P.2d 911 (1997).

[7] *Id.*

[8] *Kunkel v. Fisher*, 106 Wn. App. 599, 602, 23 P.3d 1128 (citing *Mountaineers v. Wymer*, 56 Wn.2d 721, 722, 355 P.2d 341 (1960)), *review denied*, 145 Wn.2d 1010 (2001).

of others.[9] Smersh concedes Drake has proven that his use was open and notorious, over a uniform route, and continuous and uninterrupted for a 10-year period. The only issue on appeal is whether he has proved his use was adverse. In Washington, a claimant's use is adverse when he "uses the property as the true owner would, under a claim of right, disregarding the claims of others, and asking no permission for such use."[10] A court may determine adversity from the actions of the claimant and the property owner.[11] Use is not adverse if it is permissive.[12] Whether use is adverse or permissive is generally a question of fact, but if the essential facts are not in dispute, it can be resolved as a question of law.[13]

Smersh argues that a presumption of permissive use applies in this case, and the trial court improperly concluded that the presumption terminated when Wallens, Smersh's predecessor in interest, sold the servient land to the Wright Fish Company in 1975. Drake asserts that (1) the presumption of permissive use articulated in *Kunkel v. Fisher*[14] does not apply in this case, (2) there is no evidence from which the court can draw an inference of neighborly sufferance or acquiescence, and (3) even if a presumption of permissive use or neighborly acquiescence did apply, Drake's evidence rebuts the presumption by clearly establishing the element of adverse use.

First, *Kunkel v. Fisher* is distinguishable. Kunkel sought a prescriptive easement in an area adjacent to his property over which he drove his trucks to reach a parking area at the rear of his property. There was significant evidence in

---

[9] *Lingvall v. Bartmess*, 97 Wn. App. 245, 252, 982 P.2d 690 (1999) (citing *Hendrickson v. Sund*, 105 Wash. 406, 410, 177 P. 808 (1919); *Anderson v. Secret Harbor Farms*, 47 Wn.2d 490, 494, 288 P.2d 252 (1955)).

[10] *Kunkel*, 106 Wn. App. at 602.

[11] *Id.*

[12] *Id.*

[13] *Lingvall*, 97 Wn. App. at 250.

[14] 106 Wn. App. 599, 23 P.3d 1128, *review denied*, 145 Wn.2d 1010 (2001).

the record that Kunkel discussed using the easement with Fisher's predecessor in interest who gave him permission to drive over the property. Even Kunkel testified that his neighbors were very accommodating to him about the use. Based on this evidence, it was clear that Fisher's predecessor permitted Kunkel's use or, at a minimum, acquiesced in it.[15] As such, Kunkel did not establish a factual basis for his prescriptive easement claim.

Second, we recognize on reflection that our analysis in *Kunkel* extended the *implication* of permissive use by neighborly accommodation too far when we applied a *presumption* of permissive use. At least one legal scholar criticizes *Kunkel* for applying a presumption of permissive use akin to the "vacant lands doctrine"[16] in a case where both pieces of land were developed and in the face of Washington cases establishing that another's use of improved land is presumed hostile or adverse.[17] Because *Kunkel* has been interpreted to apply a presumption of permissive use in prescriptive easement cases involving

[15] *Lingvall*, 97 Wn. App. at 251 ("permissive use *may* be implied in 'any situation where it is reasonable to infer that the use was permitted by neighborly sufferance or acquiescence' ") (emphasis added) (quoting *Roediger v. Cullen*, 26 Wn.2d 690, 707, 175 P.2d 669 (1946)); *see also* 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.7, at 103 (1995) (stating that "[p]ermission may in a proper case be implied . . . .").

[16] The vacant lands doctrine was articulated in *N.W. Cities Gas Co. v. W. Fuel Co.*, 13 Wn.2d 75, 123 P.2d 771 (1942). It held that in cases of vacant land, there is a presumption that the use was permissive. To prevail on a prescriptive easement claim when the vacant land doctrine applies, the claimant must present evidence rebutting the presumption. This is an exception to the general rule that in cases where the land is developed, if the claimant proves the elements of adverse possession, there is an assumption the use was adverse. *See generally* 17 STOEBUCK, *supra*, at 101.

[17] *See N.W. Cities Gas*, 13 Wn.2d at 85 ("[P]roof that use by one of another's land has been open, notorious, continuous, uninterrupted, and for the required time, creates a *presumption* that the use was *adverse*, unless otherwise explained, and, in that situation, in order to prevent another's acquisition of an easement by prescription, the burden is upon the owner of the servient estate to rebut the presumption by showing that the use was permissive."); *see also* 17 STOEBUCK, *supra*, at 101 (interpreting Washington law as holding that "[I]f the claimant shows use of another's land that is unexplained and is open and notorious, 'continuous,' and 'exclusive,' there is a 'presumption' that the use was hostile . . . .").

developed land,[18] we take this opportunity to clarify the rule. In developed land cases, when the facts in a case support an inference that use was permitted by neighborly sufferance or accommodation, a court may *imply* that use was permissive and accordingly conclude the claimant has not established the adverse element of prescriptive easements. In contrast, courts should apply the "vacant lands doctrine" and its *presumption* of permissive use only in cases involving undeveloped land because, in those cases, owners are not in the same position to protect their title from adverse use as are owners of developed property.[19]

██ We now consider whether there is any evidence in this record supporting a reasonable inference of permissive use. We conclude there is no basis on which a court could reasonably infer that Massey's use was permitted by neighborly sufferance or acquiescence.[20] When Massey purchased the land in 1952, the driveway was the only existing access to the property, and it was located on the Wallens' lot. There is no evidence that Massey asked for permission or received express consent either to use the driveway or to extend it onto his own property with a bulldozer. In addition, the record shows no relationship between Massey and the Wallens from which one could infer permissive use.[21]

---

[18] Although we acknowledge that *Kunkel* was not clearly reasoned, we emphasize that had we *inferred* neighborly accommodation as the law allows, rather than applying a *presumption*, the outcome in that case would have been the same.

[19] Although the facts in *Kunkel* established that the Fishers rarely observed Kunkel traversing the property because they did not always reside on the property and Kunkel would "depart before they arrived and return after they had left," it was undisputed that the Fishers were aware of his use. These facts are properly considered when determining whether the use is "open" and "notorious." They present a scenario quite different from a case in which a vacant land owner has no opportunity to learn about open and adverse use of his property. *See N.W. Cities Gas*, 13 Wn.2d at 86 (even in cases involving open and unenclosed lands, a court may grant a prescriptive easement when " 'the use . . . convey[s] to the absent owner reasonable notice that a claim is made in hostility to his title' ") (quoting *Watson v. Bd. of Comm'rs*, 38 Wash. 662, 665, 80 P. 201 (1905)).

[20] *Kunkel*, 106 Wn. App. at 602 (The inference of permissive use applies when a court can reasonably infer that the use was permitted by neighborly sufferance or acquiescence.).

[21] *Compare Granston v. Callahan*, 52 Wn. App. 288, 294, 759 P.2d 462 (1988) (a relationship between two brothers was consistent with a finding of implied

Nor does it show any circumstance that suggests neighborly sufferance or acquiescence.[22]

Finally, there is sufficient evidence establishing that the driveway use was adverse. The uncontested findings of fact[23] and the record support the court's conclusion that Drake's use was adverse because the Masseys (and later Drake) used the driveway "as the owner himself would . . . entirely disregarding the claims of others, asking permission from no one, and using the property under a claim of right" beginning in 1952.[24] Massey extended the driveway to his property and maintained it, used the driveway to bring in materials and equipment to build his home and garage, and he and his tenants used the driveway as the sole access to the property until he sold it to Drake in 1984. The record shows that Massey could have built a driveway accessing his property from adjacent Nugent Road, but he simply never did.[25] In sum, the Masseys and Drake used the driveway as if they owned it and did so without permission. Accordingly, their use was adverse.

Because we cannot draw a reasonable inference of permissive use from the facts in this case and there are

permission because a court may imply a permissive use when there is evidence of a close, friendly, or family relationship between the claimant and the servient property owner). *See also Miller v. Jarman*, 2 Wn. App. 994, 997, 471 P.2d 704 (finding a close, friendly relationship between the parties supported a trial court's conclusion that the use was permissive), *review denied*, 78 Wn.2d 995 (1970)).

[22] *Compare Crites v. Koch*, 49 Wn. App. 171, 741 P.2d 1005 (1987) (where the parties agreed that it was common for farmers to cross and to park equipment on their neighbors' fields and that use was recognized as neighborly courtesy suggested the use of a neighbor's property for this purpose was not adverse for purposes of a prescriptive easement).

[23] *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991) ("Uncontested findings of fact are deemed verities on appeal.").

[24] *Lingvall*, 97 Wn. App. at 250 (adverse use does not require ill will but means using the property as the owner himself would).

[25] Smersh contests the court's finding that the driveway was the "sole means of access to [Drake's] cabin." Substantial evidence supports the finding because at the time Smersh prevented Drake's access to the driveway, it was the sole means of access to Drake's property. Contrary to Smersh's argument, the court's finding does not suggest the property is landlocked or Drake used the driveway as a matter of necessity.

sufficient facts in the record supporting that Drake's use was adverse, we affirm the trial court's decision.[26]

Cox, A.C.J., and Grosse, J., concur.

---

[26] Because there is no evidence of permissive use, we need not reach the question of whether the trial court erred by concluding that any presumption of neighborly accommodation terminated with the original owners.